ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana



FILED
Mar 02 2015, 10:36 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

_____

No. 19S05-1409-CR-599

STATE OF INDIANA,

*Appellant,*

v.

MICHAEL E. CUNNINGHAM,

*Appellee.*

_____

Appeal from the Dubois Superior Court, No. 19D01-1305-FD-460
The Honorable Mark R. McConnell, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 19A05-1310-CR-489

_____

**March 2, 2015**

**Rush, Chief Justice.**

Unless police have reasonable suspicion that a subject is armed and dangerous, they may generally conduct a pat-down for officer safety only with the subject's voluntary consent. Here, Defendant asked to step out of his truck during a traffic stop, and police made their permission conditional on a pat-down. Defendant argues that choice was inherently coercive and rendered his consent involuntary, but we disagree. Police could simply have required Defendant to remain in the truck, with no option of getting out, as part of their authority to control the scene of a traffic stop. Therefore, they could also make permission to exit conditional on consent to a pat-down, since Defendant had the option of staying in the truck and thus avoiding the search. We granted transfer

after oral argument, and now reverse the trial court's grant of Defendant's motion to suppress evidence obtained as a result of the pat-down.

**Facts and Procedural History**

At about midnight on May 17, 2013, police pulled over Defendant Michael Cunningham for a traffic stop. One of his taillights was broken, "emitting a glaring or blinding light" because the red lens was completely gone. The officer described the broken taillight to Defendant, who said that "he knew the . . . lens had been cracked, but he didn't realize . . . it was missing," and he "asked if he could exit the vehicle to look at it." The officer told Defendant "that was fine but I would pat him down for any weapons just for officer safety issue [*sic*]," and Defendant "said that was fine" and exited the vehicle.

At that point, Defendant submitted to a pat-down. He had no weapons, but the officer recognized by feel that there was a pill bottle in Defendant's right front pocket. The officer asked what was in the bottle, and Defendant admitted that it contained marijuana and took the bottle out of his pocket. The officer then asked Defendant about "anything else on his person," and Defendant admitted he had a pipe in his truck and offered to go get it. After giving Defendant his <u>Miranda</u> warnings, the officer asked him to retrieve the pipe. But in response to further questions about the source of the marijuana, Defendant's "reply was if he was going to jail tonight, he wasn't going to answer any further questions." Nevertheless, Defendant was "very much" cooperative during the traffic stop.

Defendant was arrested and charged with possession of marijuana and possession of paraphernalia as Class A misdemeanors, as well as Class D felony enhancements of each offense based on his prior convictions. He then moved to suppress both the pill bottle and the pipe on two grounds: first, the traffic stop was invalid because even with the missing lens, both taillights had working bulbs and thus served their purpose of signaling when the truck was slowing down; and second, even if the stop was valid, the pat-down was not because Defendant consented only to a search for weapons, and the officer knew by feel that the object in Defendant's pocket was merely a pill bottle. The trial court granted suppression, reading Indiana Code section 9-19-6-4 to require only one red taillight, finding no requirement that "only red light" be visible—thus holding the traffic stop invalid without considering whether consent was valid. The State appealed.

A divided panel of the Court of Appeals affirmed on different grounds in a published decision. <u>State v. Cunningham</u>, 4 N.E.3d 800 (Ind. Ct. App. 2014). The panel unanimously reversed the

2

trial court's analysis of the taillight statute, because under Indiana Code section 9-19-6-4(c) (2010), vehicles manufactured after 1956, like Defendant's truck, must have two red taillights, not just one.[1] Id. at 804, 807. But the majority accepted Defendant's alternative argument on appeal that his consent to the pat-down "was invalid because it was merely acquiescence to police actions and directions." Id. at 805 (internal quotation marks omitted). The majority reasoned that because a non-consensual pat-down requires particularized "reasonable suspicion" of danger, and the officer had no such suspicion here, he could not require a pat-down as a condition of allowing Defendant to leave his truck. Id. at 805–06. Instead, the majority concluded, if the officer "believed it was more dangerous for [Defendant] to be outside of his vehicle than inside of it, he could have taken the less-invasive step of ordering him to stay inside" instead of "g[iving] an ultimatum" that leaving the truck would require a pat-down. Id. at 806.

But Judge Brown dissented on this point, reasoning that since police may order occupants to stay in a vehicle during a traffic stop, they could properly give conditional permission to get out. And because there was no need to exit the truck in that moment—Defendant could have inspected the taillight after the stop was complete—his statement that a pat-down was "fine," and his choice to get out knowing that a pat-down would result, were voluntary and not coerced. Id. at 807.

The State sought transfer, arguing that a choice between being patted down as a condition of exiting one's vehicle, or else remaining in the vehicle unsearched, is not coercive. We agree.

**Standard of Review**

Whether consent to a search was given voluntarily "is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). We "consider conflicting evidence most favorably to the trial court's ruling," Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008) (citing State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006)), as well as undisputed evidence favorable to the defendant, see Fair v. State, 627 N.E.2d 427, 434 (Ind. 1993). It is the State's burden to prove that consent to a search "was in fact voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth, 412 U.S. at 248. And when the State appeals from a matter on which it bore the burden of proof, the negative judgment applies and

---

[1] On this point, we summarily affirm the Court of Appeals. See Ind. Appellate Rule 58(A)(2).

requires the State to show that the prior court's ruling was contrary to law. State v. Washington, 898 N.E.2d 1200, 1203 (Ind. 2008) (citing State v. Estep, 753 N.E.2d 22, 24–25 (Ind. Ct. App. 2001)).

## Discussion

"Many search and seizure issues are resolved in the same manner under both the Indiana and Federal Constitutions," Campos, 885 N.E.2d at 596, and this case falls within that category. Under both Constitutions, it is axiomatic that a search requires a warrant unless certain narrow exceptions apply—one of which "is an investigatory stop based on reasonable suspicion." Id. at 597 (citing Terry v. Ohio, 392 U.S. 1, 30–31 (1968) and Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999)). Another such exception is consent, since a "search based on lawful consent is consistent with both the Indiana and Federal Constitutions." Campos, 885 N.E.2d at 600.

The essence of Defendant's argument on transfer, is that his consent was not given voluntarily—reasoning that it is inherently coercive to make a pat-down a condition of getting out of a stopped vehicle when police have no reasonable suspicion to independently justify a pat-down. The tacit premise of Defendant's view, though, is that he had a *right* to exit the car while the traffic stop was in progress, which is inconsistent with law enforcement's well-established authority to require stopped motorists to stay in the car until the stop is complete. We therefore reject Defendant's position.

## I. It Is Not Inherently Coercive to Choose Whether to Get Out of a Car and Be Frisked, or to Stay Inside Unsearched.

A routine traffic stop presents enough "concern for officer safety" that it "may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car"—even though a stop does not automatically justify a non-consensual pat-down without reasonable suspicion that the subject may be armed and dangerous. Knowles v. Iowa, 525 U.S. 113, 117–18 (1998) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) and Terry, 392 U.S. at 30). But if ordering occupants *out* of a car is only a "minimal *additional* intrusion" under the Fourth Amendment, Knowles, 525 U.S. at 117 (emphasis added), ordering them to remain *in* the car until the end of the stop is necessarily a *lesser* intrusion, and therefore permissible. Likewise, we have held that Article 1, Section 11 of the Indiana Constitution likewise "permits police to stop and briefly detain a motorist if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal

4

activity," including a traffic violation. <u>Mitchell v. State</u>, 745 N.E.2d 775, 787 (Ind. 2001) (citing <u>Baldwin</u>, 715 N.E.2d at 340). Indeed, Defendant's transfer brief concedes as much by arguing that police could simply have told him, "No, you cannot leave the car." Without a doubt, then, police needed no particularized suspicion to order Defendant to stay in the car—either by an express order to stay in, or by denying permission to get out.

The logical conclusion of Defendant's argument, then, is that if a motorist asks to get out of the car during a traffic stop, police have no choice but to either forbid it entirely or permit it uncon-ditionally. We cannot agree. The practical result of such a rule would almost certainly be that police would err on the side of caution and *never* allow drivers out of the car during a stop, thus increasing the adversarial nature of traffic stops and restricting drivers' liberty more than would otherwise be the case. Giving police a measure of discretion in their interactions with motorists will give motorists greater freedom as well. That discretion is surely not limitless—for example, we might find it inher-ently coercive to ask permission to search the *inside* of a car as a condition of letting the driver get *out*, since that condition would not be the "least intrusive means" of accommodating the motorist's request. <u>See</u> <u>Wilson v. State</u>, 745 N.E.2d 789, 793 (Ind. 2001) (quoting <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983)). But we find no inherent coercion in the choice between remaining in the car, or being patted down as a condition of getting out.

Nor does <u>Jett v. State</u>, on which Defendant relies, suggest otherwise. 716 N.E.2d 69 (Ind. Ct. App. 1999). There, a driver got out of his car as soon as police pulled him over, but immediately got back in when ordered and made no furtive or threatening movements. <u>Id.</u> at 70–71. Yet police then ordered him back out of the car and performed a pat-down, discovering marijuana in his pocket. The Court of Appeals held even though the driver's initial conduct "was unusual and could be seen as a sign of hostility toward the officer," his subsequent behavior "alleviated" any reasonable fear for officer safety and made the pat-down search unreasonable. <u>Id.</u> at 70–71. But <u>Jett</u> holds only that if a driver complies with an order to stay in his car during a traffic stop, police may not perform a pat-down just because he had initially exited the car without permission. It does not forbid police to offer a free choice between a pat-down to get out of the car, or else staying in the car unsearched.

## II. Defendant's Right to Refuse Consent to Search Was Implicit in His Choice to Get Out of the Vehicle or Stay In.

Defendant also claims that police implied he "had no choice but to submit to the pat-down *when he exited the vehicle*, despite the absence of reasonable suspicion that he was armed and dangerous." 4 N.E.3d at 806 (emphasis added). But "*when* he exited the vehicle" begs the question. Defendant freely chose to check his taillight during the stop rather than wait until the stop was over—and thus freely chose to be searched.

Consent to search is invalid when police imply that the subject has no option for refusing the search. For example, in Campos, a driver who had been asked for consent to search asked police, "Is it really necessary?" and the officer answered, "Yes." 885 N.E.2d at 595. We held that by telling the driver the search was "necessary," the officer "announced, in effect, that [the driver] had 'no right to resist the search'" so that his purported consent was invalid. Id. at 600 (quoting Bumper v. North Carolina, 391 U.S. 543, 550 (1968)). That is, the context of the driver's dialogue with police suggested he did not really have a choice about whether the search would happen.

By contrast here, the very fact that Defendant asked permission to get out of his truck implies that he knew he was expected to stay in the truck unless he had specific permission to do otherwise. As Judge Brown's dissent recognized, "the police were neither acting nor directing but rather responding to [Defendant]'s request to get out of his vehicle." 4 N.E.3d at 807 (Brown, J., dissenting). In that context, telling him "that was fine but I would pat him down for any weapons," id. at 803 (majority opinion) did not "announce[], in effect, that [he] had no right to resist" the pat-down, Campos, 885 N.E.2d at 600. Rather, it must be understood against Defendant's recognition that he could choose (or even be required) not to get out of the truck—and thus not be patted down.

Defendant having a truly free choice also defeats his related argument that his consent was not valid because police never told him he could refuse consent. "[V]oluntariness is a question of fact to be determined from all the circumstances." Bustamonte, 412 U.S. at 248–49. "While knowledge of the right to refuse consent is one factor to be taken into account," it is not "the *sine qua non* of an effective consent." Id. at 227. And as we have explained, the circumstances of Defendant's request, and the officer's response, reflect Defendant's knowledge that he could avoid an unwanted search simply by choosing not to get out of his truck. It may have been preferable in retrospect if the officer had stated that choice explicitly. But regardless of any imprecision in the officer's language, Defendant recognized from the circumstances that he could refuse the search

6

simply by changing his mind about inspecting the taillight. Accordingly, his choice to step out of the truck and submit to the pat-down it entailed was free and voluntary.

**III. Defendant Was Not Coerced Into Broadening the Scope of His Consent to Search.**

Finally, Defendant argues that he consented, at most, to a weapons search, and because police knew the object in his pocket was merely a pill bottle and not a weapon, any further inquiry about the bottle or its contents exceeded the scope of his consent. As we recently reiterated, "a consensual search allows a suspect to limit or restrict the search as he or she chooses" and "the scope of a consent search [is] generally defined by the object of the search." McIlquham v. State, 10 N.E.3d 506, 513 (Ind. 2014) (alteration in original) (internal quotation marks omitted) (quoting Kubsch v. State, 784 N.E.2d 905, 918 (Ind. 2003) and Krise v. State, 746 N.E.2d 957, 964 (Ind. 2001)). But those principles limit only "where police may look, not what they actually find." McIlquham at 513. Here, consenting to a pat-down "for any weapons" permitted police to pat-down any part of Defendant's clothing where a weapon might be found, including the pocket that contained the pill bottle. Thus, the issue is not whether the pill bottle itself was improperly discovered, but whether the officer's question about its contents coerced Defendant into expanding the scope of the consent he initially gave.

We have recognized that repeated requests and accusatory questions can contribute to a coercive environment that negates consent. In Sellmer v. State, police essentially badgered the owner of a car into giving consent to search. 842 N.E.2d 358, 364-65 (Ind. 2006). They asked her for consent "between three and five times" before she relented and asked a string of pointed and potentially incriminating questions—telling her they had received a tip "that there was a large amount of illegal drugs in" her car and asking, "Do you know of any drugs that might be in your vehicle? Are there any drugs in this car? Do you know of any drugs that might be in the car or why our dispatcher would have received this call?" Id. at 364. We held that conduct, together with several other coercive tactics, combined to invalidate the subject's consent—though we also recognized that no one (nor even several) of those tactics in isolation would have made that steep showing. Id. at 364–65.

But the police conduct here was far less confrontational than in Sellmer. Upon identifying the pill bottle by feel, the officer did not engage in aggressive or badgering questions, but asked

only a single, open-ended question about its contents—"expecting [Defendant] to say it was his medication," not to volunteer an incriminating answer. Instead, Defendant volunteered that the bottle contained marijuana, then without prompting took the bottle out of his own pocket and showed it to the officer. Then and only then, the officer asked a followup question, which was still consistent with a pat-down—whether "there was anything else *on his person* that . . . I needed to be aware of" (emphasis added)—to which Defendant volunteered, "I've got a pipe in the truck" and offered "to go get it." At that point, the officer advised Defendant of his rights before the investigation went any further.

Thus, even though the scope of Defendant's encounter with law enforcement broadened from his initial consent to a simple pat-down for weapons, that expansion resulted from information he volunteered, without coercion from (or even leading by) the investigating officer. Just as Defendant could consent to the initial patdown, he could—and did—consent to its expansion. We find no violation of his constitutional rights.

## Conclusion

Police always have the right to require a driver to remain inside the vehicle during a traffic stop, even without particularized officer-safety concerns. Accordingly, it is not inherently coercive for police to give conditional permission to step out of the vehicle, subject to the motorist's consent to a pat-down. Such a situation offers the motorist a free choice to remain unsearched by staying inside the vehicle—so stepping out signifies consent, not coercion. And here, any expansion of the search from Defendant's initial consent was the product of his subsequent consent, and not of improper police conduct. We therefore reverse the trial court's order granting Defendant's motion to suppress, and remand for further proceedings.

Dickson, David, and Massa, JJ., concur.

Rucker, J., dissents with separate opinion.

8

**RUCKER, J., dissenting.**

In my view the State has failed to establish Cunningham's purported consent to the pat-down was constitutionally valid. Therefore I respectfully dissent.

The Fourth Amendment requires officers to have more than an "inchoate and unparticularized suspicion or 'hunch'" that the person stopped is armed and dangerous in order to justify a pat-down search. Terry v. Ohio, 392 U.S. 1, 27 (1968). The requirement that an officer has reasonable suspicion to search an individual in a vehicle not only applies to the driver but extends to protect passengers as well. Arizona v. Johnson, 555 U.S. 323, 327 (2009). The requirement also applies when the person has been ordered out of the vehicle by police officers, Knowles v. Iowa, 525 U.S. 113, 117-18 (1998), or when a person steps out on his own volition. Jett v. State, 716 N.E.2d 69, 70-71 (Ind. Ct. App. 1999).

Law enforcement officers do face significant risks in performing traffic stops and it is for this reason the Fourth Amendment allows an individual's privacy interests to be balanced against officer safety interests.

> However, to subject the stopped motorist to a frisk for weapons is permissible only if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Police may not frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked. An officer's authority to conduct a pat-down search is dependent upon the nature and extent of his particularized concern for his safety and that of others.

Wilson v. State, 745 N.E.2d 789, 792 (Ind. 2001) (quotations and citations omitted). The State concedes here, as it must, that no reasonable suspicion existed to pat down Cunningham. There was no indication to Officer Hammock that Cunningham was a threat to his safety. Indeed, in describing the interaction with Cunningham, Officer Hammock testified that Cunningham had been "very" cooperative throughout. Tr. at 14. Thus the State advances the argument that the search was

acceptable under the Fourth Amendment based on consent—which is a well-recognized exception to the warrant requirement.  Krise v. State, 746 N.E.2d 957, 961 (Ind. 2001).

The State has the burden of proving consent to a search was freely and voluntary given. Campos v. State, 885 N.E.2d 590, 600 (Ind. 2008).  Whether consent was freely given is determined from the totality of the circumstances.  Garcia-Torres v. State, 949 N.E.2d 1229, 1237 (Ind. 2011). Acquiescence to a claim of lawful authority is not sufficient for the State to meet this burden. Bumper v. N. Carolina, 391 U.S. 543, 548-49 (1968).

The majority relies on Schneckloth v. Bustamonte for the proposition that "'[w]hile knowledge of the right to refuse is one factor to be taken into account,' it is not 'the *sine qua non* of an effective consent.'"  Slip op. at *6 (citation omitted).  Like Justice Marshall,

> I would have thought that the capacity to choose necessarily depends upon knowledge that there is a choice to be made.  But today the Court reaches the curious result that one can choose to relinquish a constitutional right—the right to be free of unreasonable searches— without knowing that he has the alternative of refusing to accede to a police request to search.

Schneckloth, 412 U.S. 218, 277 (1973) (Marshall, J., dissenting) (footnote omitted).  For the same reason, here Cunningham's consent to this search was not voluntarily given.

It is of course the case that police officers have the authority to maintain control of a traffic stop, including ordering someone to either stay in or exit a vehicle.  However, it goes too far to permit a police officer to be able to barter an individual's constitutional right to be free from warrantless, unreasonable searches in exchange for the individual to verify he in fact was committing a minor traffic infraction as the officer alleged.  Up to the point when Cunningham asked to step out of the vehicle, the officer had no safety concerns.  The officer also had not instructed Cunningham to remain in the vehicle.  If instead of asking permission Cunningham simply had gotten out of the vehicle, inspected the light in the same calm demeanor, then immediately got back in his vehicle— whether or not Officer Hammock in the meantime had ordered him back in—Cunningham would not have done anything to warrant a search.  See Jett v. State, 716 N.E.2d at 71.  Unlike the majority, it

appears to me Office Hammock was not seeking Cunningham's permission to search in telling Cunningham he "would pat him down." Tr. at 6 (emphasis added). Instead it is apparent the officer was merely asserting that he had that right. Cunningham's response of "that was fine," id., only served as verbal acknowledgement of his submission to the claimed authority.

I agree with my colleagues on the Court of Appeals that the "pat-down search of Cunningham violated the Fourth Amendment and the resulting fruits of that search must be suppressed." State v. Cunningham, 4 N.E.3d 800, 807 (Ind. Ct. App. 2014). Accordingly, I would affirm the trial court's grant of Cunningham's motion to suppress.