## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2016, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary A. Williams, *Appellant-Defendant,* | May 24, 2016 |
| v. | Court of Appeals Case No. 02A03-1510-CR-1847 |
| | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable John F. Surbeck, Judge |
| | Trial Court Cause No. 02D05-1505-F4-28 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Gary A. Williams was convicted of Level 4 felony unlawful possession of a firearm by a serious violent felon, Class A misdemeanor possession of a controlled substance, and Class B misdemeanor possession of marijuana. He was also adjudicated a habitual offender. The convictions were based on evidence discovered after Williams consented to a search of his pocket. Williams claims that the search extended beyond the scope of his consent and, therefore, the evidence found during and after the search should have been excluded from evidence.

[2] We affirm.

## Facts & Procedural History

[3] On the afternoon of April 29, 2015, Fort Wayne Police Officer George Nicklow was in a parking lot surveilling the apartment of a known gang member. Officer Nicklow was in uniform but driving an unmarked vehicle. He observed an SUV drive slowly toward him and pull into the parking spot on the officer's passenger side. Williams, the later-identified driver of the SUV, made eye contact with Officer Nicklow and then backed into a parking spot behind Officer Nicklow. Williams stayed in his vehicle and watched the officer. After about five minutes, Officer Nicklow became concerned and radioed Officer Robert Hollo, who was in the area. Shortly thereafter, Williams left the parking lot and drove to a nearby gas station.

[4] Officer Hollo watched Williams from a distance. Williams "put the gas nozzle in his tank" for only about two minutes and then left, "like he didn't even pay".

*Trial Transcript* at 142, 143. Officer Hollo informed Officer Nicklow that Williams appeared to be returning to the apartment complex, so Officer Nicklow returned to the complex.

[5] Upon arriving, Officer Nicklow observed Williams's SUV parked in front of a different apartment building. Williams was not inside the SUV, but the engine was running. Williams came out of the apartment after a couple minutes and entered the SUV, backed out, and then parked behind Officer Nicklow in about the same area he had before. In light of this suspicious activity, Officer Nicklow asked Officer Hollo to return to the area. Officer Hollo quickly returned and parked nearby.

[6] As the uniformed officers exited their vehicles to approach the SUV, Williams stepped out with a diaper bag on his shoulder. Williams spoke first, saying "what's up[?]" *Id*. at 147. Officer Hollo responded, "how's it going[?]" *Id*. Officer Hollo noticed a "big bulge" in Williams's front right pocket. *Id*. When he asked Williams what was in the pocket, Williams did not respond. Officer Hollo then asked if he "could see what was inside his pocket." *Id*. at 148. Williams said, "go ahead." *Id*. Officer Hollo reached into the pocket and pulled out a translucent pill bottle, which contained what the officer recognized to be marijuana.

[7] Officer Hollo removed the diaper bag from Williams's shoulder and placed him under arrest for possession of marijuana. A subsequent search incident to arrest led to the discovery of a larger bag of marijuana, a hydrocodone pill, and

several plastic baggies. There was also a loaded gun inside the diaper bag that Williams had been carrying, as well as a baby inside the SUV.

[8] On May 5, 2015, the State charged Williams with Level 4 felony unlawful possession of a firearm by a serious violent felon, Class A misdemeanor possession of a controlled substance, and Class B misdemeanor possession of marijuana. The State later filed a habitual offender allegation.

[9] On July 30, 2015, Williams filed a motion to suppress. At the conclusion of the hearing on August 20, 2015, the trial court denied Williams's motion to suppress. The court expressly found that a consensual encounter occurred between Williams and the officers during which Williams consented to the search of his pocket.

[10] Williams's two-day jury trial commenced on August 26, 2015. Williams renewed his suppression argument at trial with objections to the challenged evidence, but the trial court admitted the evidence. The jury found Williams guilty as charged and found him to be a habitual offender. The trial court sentenced him, on September 28, 2015, to an aggregate term of twenty-seven years in prison. Williams now appeals on grounds that the search violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

## Discussion & Decision

[11] Williams improperly frames the issue on appeal in terms of whether the trial court erred in denying the motion to suppress. The issue, rather, is whether the trial court abused its discretion by admitting the challenged evidence at trial. *See Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). On review for abuse of discretion, we will reverse "only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id*. at 260.

[12] On appeal, Williams effectively concedes that his encounter with Officers Hollo and Nicklow was consensual.[1] Indeed, he was not in custody or detained in any way at the time he gave Officer Hollo permission to search his pocket. Williams's argument is simply that Officer Hollo's search exceeded the scope of the consent given. According to Williams, his consent was limited to a search of his pocket to see if it contained a weapon. Once Officer Hollo determined that there was no weapon, Williams contends that the officer should have ended the search without removing the pill bottle.

[13] Williams's argument is well off the mark. As our Supreme Court has recognized, many search and seizure issues are resolved in the same manner under both the Indiana and Federal Constitutions. *See State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015). This case falls within that category. *See id*. Under both Constitutions, a search requires a warrant unless certain narrow exceptions

---

[1] "Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis." *Id*. at 261.

apply, one of which is a search based on lawful consent. *Id. See also Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) ("we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so").

[14] A consensual search allows the individual consenting to the search to limit or restrict the search as he or she chooses. *Cunningham*, 26 N.E.3d at 28. The scope of the search is generally defined by the expressed object of the search, which "limit[s] only 'where police may look, not what they actually find.'" *Id.* (quoting *McIlquham v. State*, 10 N.E.3d 506, 513 (Ind. 2014)). *See also Jimeno*, 500 U.S. at 251.

[15] In this case, Williams consented to the search of his pocket by Officer Hollo and did not articulate any limitation on the scope of that search. Neither Williams nor Officer Hollo stated at the time that the search was intended to be a search for weapons, and we will not infer such an unexpressed limitation. Based on the brief, casual exchange between Williams and Officer Hollo, a "typical reasonable person" would have understood that Williams's general consent to see what was inside his pocket included consent to remove the pill bottle from inside that pocket. *Jimeno*, 500 U.S. at 251 ("The standard for measuring the scope of a suspect's consent…is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?"). Because the search did not exceed the scope of Williams's consent, the trial court properly admitted the evidence.

[16]    Judgment affirmed.

[17]    Bailey, J. and Bradford, J., concur.