# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/18/2017, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle D. Gobel
Collier Gobel Homann, LLC
Crawfordsville, IN

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Dale Guthrie, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 18, 2017 <br><br> Court of Appeals Case No. <br> 54A04-1703-CR-515 <br><br> Appeal from the Montgomery <br> Superior Court 1 <br><br> The Honorable Heather Barajas, <br> Judge <br><br> Trial Court Cause No. <br> 54D01-1601-F6-0004 |

**Vaidik, Chief Judge.**

# Case Summary

Richard Dale Guthrie appeals his convictions for Level 6 felony possession of a syringe and Class C misdemeanor possession of paraphernalia. Guthrie argues that he did not validly consent to a search that was a condition of him accepting a complimentary ride from a police officer after his SUV broke down on the side of the road early one December morning. In the alternative, he argues that even if he validly consented, the officer's search exceeded the scope of his consent. Finding that Guthrie voluntarily consented to the search and that the officer was well within the scope of Guthrie's consent when he found the contraband, we affirm.

# Facts and Procedural History

Around 4:35 a.m. on December 26, 2015, Deputy Austin Thomen with the Montgomery County Sheriff's Department was on patrol when he noticed a SUV parked on the side of U.S. 231. He pulled over and approached the SUV. Guthrie was in the driver's seat, and Willard Dunn was in the passenger seat. Deputy Thomen asked the men for their identification cards and why they were stopped on the side of the road. The men told him that their SUV had "died" on their way back to Lafayette. Tr. Vol. II p. 5. Deputy Thomen returned to his patrol car to run a check, and both men came back with suspended driver's licenses. Deputy Thomen called a tow truck since neither man could drive. He also requested assistance from the Crawfordsville Police Department to provide "complimentary" transportation for the men (Deputy Thomen generally

transported only one person at a time). *Id.* at 53. According to Deputy Thomen, law enforcement sometimes provides complimentary transportation when a motorist is stranded.

[3] After making the calls, Deputy Thomen returned to the SUV to tell Guthrie that he would be issuing him a citation for driving while suspended and that officers from the Crawfordsville Police Department were coming so that they could give them a ride to a location of their choosing. The men said that they wanted a ride to a truck stop that was a mile down the road. When Lieutenant Hal Utterback with the Crawfordsville Police Department arrived on the scene, Deputy Thomen returned to his patrol car to begin writing the citation. Lieutenant Utterback, who chatted with Guthrie and Dunn to pass the time, started to note inconsistencies in their stories regarding where they had been and where they were going. As a result, he asked Officer Michael Plant, who had just started his shift, to come to their location with his K-9. Officer Plant arrived at 5:18 a.m. and had his K-9 "walk around" the SUV; the K-9 alerted. *Id.* at 23. The officers searched the SUV, but no contraband was found. Deputy Thomen, who in the meantime had paused writing the citation, finished the citation and handed it to Guthrie. He told Guthrie what it was for and when his court date was.

[4] At this point, Deputy Thomen asked Guthrie and Dunn if they still wanted a ride to the truck stop or if they would rather stay with their disabled SUV or walk somewhere. Deputy Thomen told them that a condition of accepting a "courtesy" ride was that they had to consent to a search for "weapons or

anything illegal on their person." *Id.* at 8, 18, 54, 55. According to Deputy Thomen, it was normal procedure to search a person before providing a complimentary ride because of "safety" concerns. *Id.* at 17. Both men consented to a search.

[5] When Deputy Thomen began patting down Guthrie, he felt a hard object in his left front pants pocket. Guthrie allowed Deputy Thomen to remove the object. *Id.* at 18. The object was a large permanent marker about six inches long and one inch wide. Deputy Thomen noticed several pry marks on the non-cap end of the marker, which aroused his suspicions. He opened the cap of the marker and saw the orange cap to a syringe. *Id.* at 55. He then removed the bottom of the marker and saw a second syringe as well as the bowl part of a spoon (the rest of the spoon had been removed). *Id.* at 55-56; s*ee also* Ex. 4. The bowl contained burn marks and residue. Officer Thomen arrested Guthrie while Lieutenant Utterback gave Dunn a ride to the truck stop.

[6] The State charged Guthrie with Level 6 felony possession of a syringe and Class C misdemeanor possession of paraphernalia (spoon). Guthrie filed a motion to suppress the syringes and the spoon, which the trial court denied after a hearing. A jury trial was then held, and the jury found him guilty as charged.

[7] Guthrie now appeals.

# Discussion and Decision

[8] Guthrie contends that the trial court erred in admitting into evidence the syringes and the spoon. He first argues that his consent to the search was invalid. Under both the United States and Indiana Constitutions, it is axiomatic that a search requires a warrant unless certain narrow exceptions apply. *State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015). One such exception is consent. *Id.*

[9] Under both constitutions, the State carries the burden of proving that the consent was voluntarily given. *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). Voluntariness is a question of fact to be determined from all the circumstances. *Id.* We consider conflicting evidence most favorably to the trial court's ruling as well as undisputed evidence favorable to the defendant. *Cunningham*, 26 N.E.3d at 25. A consent to search is valid except where procured by fraud, duress, fear, or intimidation or where it is merely a submission to the supremacy of the law. *McIlquham*, 10 N.E.3d at 511; *see also Cunningham*, 26 N.E.3d at 27 (explaining that consent to search is invalid when police imply that the subject has no option for refusing the search).

[10] Here, after the search of the SUV revealed no contraband and Deputy Thomen handed Guthrie the citation for driving while suspended, he gave Guthrie and Dunn two options: (1) they could wait with their disabled SUV or walk somewhere or (2) they could accept a courtesy ride to the truck stop so long as they consented to a search for "weapons or anything illegal on their person."

Both men wanted a ride and consented to the search. Guthrie testified at the motion-to-suppress hearing about his decision:

> I figured I was free to leave when I was asked if I needed a ride. Um **my passenger consented right away and I said, I agreed along with**, I didn't really need [a ride] because I'm from here and he is not. So, I just went along with it because it was just a mile down the road.

Tr. Vol. II p. 31 (emphasis added).

[11] Contrary to Guthrie's argument on appeal, he did not have "little choice but to consent to Deputy Thomen's search." Appellant's Br. p. 14. Deputy Thomen expressly told Guthrie that he did not have to accept the courtesy ride. Guthrie could have waited with the SUV, as a tow truck had already been called. Or Guthrie could have walked to the truck stop, which, according to him, was "just a mile down the road." Finally, Guthrie had a cell phone that he could have used to call someone. Tr. Vol. II p. 31. There is simply no evidence that Deputy Thomen used fraud, duress, fear, or intimidation in obtaining Guthrie's consent to the search. As Guthrie himself testified, he was "free to leave." Based on the totality of the circumstances, we conclude that Guthrie voluntarily consented to the search.

[12] Guthrie next argues that even if he validly consented, the search exceeded the scope of his consent. A consensual search allows a suspect to limit or restrict a search as he chooses, and the scope of a consensual search is generally defined by the object of the search. *McIlquham*, 10 N.E.3d at 513. This principle limits

where police may look, not what they actually find. *Id.* For example, while consent to search for "guns, drugs, money, or illegal contraband" permits physically searching a cell phone because it is a container capable of hiding such items as drugs or money, viewing the phone's data or programming exceeds the scope of such consent. *Id.* at 514.

[13] Here, as even Guthrie concedes, the consent was for "weapons or anything illegal." Appellant's Br. pp. 7-8. When Deputy Thomen patted Guthrie down, he felt a hard object in his left front pants pocket. He then removed the object with Guthrie's permission. The object was a marker six inches long and one inch wide. Because the marker was large enough to hide a weapon or drugs, Deputy Thomen acted well within the scope of Guthrie's consent when he opened the cap. The trial court did not err in admitting into evidence the syringes and the spoon.

[14] Affirmed.

Mathias, J., and Crone, J., concur.