

IN THE

# Court of Appeals of Indiana

Clifford Vance,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 27 2026, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

May 27, 2026

Court of Appeals Case No.
25A-CR-1741

Appeal from the Clark Circuit Court

The Honorable Bradley Jacobs, Judge

Trial Court Cause No.
10C02-2405-F2-14

---

**Vaidik, Judge.**

## Case Summary

[1] In the middle of the night, two uniformed police officers knocked on Clifford Vance's motel-room door, shone a flashlight on him as he stood at the door wearing only boxers, and—without telling him why they were there—asked if they could come inside to talk. Vance said yes and stepped back. Once inside, the officers observed marijuana and paraphernalia. The officers then told Vance, with "one hundred percent certainty," that they would not "lock [him] up tonight" if he gave them "everything" and asked for his consent to search the room. Vance consented, and four bags of methamphetamine and other drug evidence were found. The officers left without arresting Vance that night, and an arrest warrant was issued several days later. Vance was convicted of several drug-related offenses, including Level 2 felony dealing in methamphetamine.

[2] Vance now appeals, arguing that the officers' entry into and subsequent search of his motel room violated his rights under Article 1, Section 11 of the Indiana Constitution. We agree that the search violated Article 1, Section 11. Applying the *Litchfield* factors, we conclude that the degree of concern, suspicion, or knowledge was low; the intrusion was at least moderate and arguably high; and the law-enforcement need was at most modest. The State has not shown that

the search and seizure were reasonable under the totality of the circumstances and therefore the trial court erred in admitting the drug evidence found in Vance's room. The error was not harmless; without the drug evidence, nothing remains to support Vance's convictions. We therefore reverse.

## Facts and Procedural History

[3] Shortly before 3:00 a.m. on May 1, 2024, Jeffersonville Police Department Sergeant Denver Leverett and his partner went to Room 112 at the Holiday Motel in Jeffersonville on "a call for service." Tr. Vol. 2 p. 238. Sergeant Leverett was in "full uniform," including a "duty belt" and "a lot of other equipment," and his body camera was recording. *Id.* at 246; Tr. Vol. 3 p. 9. With a flashlight in his hand, Sergeant Leverett knocked twice on Vance's door.[1] After about 30 seconds, Vance cracked open his door wearing only boxers. Sergeant Leverett shone the flashlight directly on Vance and asked, "Hey Cliff, how you doing man?" Ex. 11 at 1:17.[2] Vance responded, "I'm doing okay, sir." *Id.* at 1:19. Sergeant Leverett then asked Vance if he could "holler at [him] real quick inside," and Vance said "yeah" and stepped back from the door. *Id.* at 1:19-1:23. As Sergeant Leverett entered the motel room, he asked Vance to step back even further. Sergeant Leverett then saw knives and

---

[1] Vance lived at the motel.

[2] There are two copies of Exhibit 11; one is redacted (36 minutes long) and the other is unredacted (40 minutes long). At trial, the redacted version was admitted into evidence and played for the jury. *See* Tr. Vol. 3 p. 31.

asked Vance to sit down. *Id.* at 1:28. Sergeant Leverett also saw a methamphetamine pipe on the nightstand and some marijuana on the floor and "detected the odor of burnt marijuana." Tr. Vol. 3 p. 12.

[4] Sergeant Leverett asked Vance if he had been smoking marijuana, and Vance replied, "I'm not gonna lie to you." Ex. 11 at 1:45-1:51. Sergeant Leverett told Vance that he "can't be smoking marijuana" because it is illegal, and that they had received a "complaint," although Sergeant Leverett didn't say what the complaint was. *Id.* at 2:15-2:18, 2:53. Sergeant Leverett told Vance that he wanted to do "everything in [his] power" to help Vance, but he couldn't make any "promises." *Id.* at 3:26-3:32. Sergeant Leverett stated that if Vance didn't lie and was "honest about everything," there was a "ninety-nine percent chance [he was] going to walk out of here, and [Vance was] going to stay in here." *Id.* at 3:40-3:51. Sergeant Leverett said it didn't matter to him if Vance had "ten pounds of weed or five kilos of cocaine." *Id.* at 3:59-4:02.

[5] Sergeant Leverett told Vance that he wasn't free to leave because of the marijuana and paraphernalia and advised Vance of his *Miranda* rights. When Vance asked if he was "in custody," Sergeant Leverett responded, "Well, you're not free to leave." *Id.* at 5:02-5:03. He then emphasized that he didn't "plan on taking" Vance to jail because he didn't "want to." *Id.* at 5:08. Sergeant Leverett reiterated that if Vance lied, things would go "downhill" because he had "a police dog in the car" and "[a]ll he does is find drugs." *Id.* at 5:50-5:56. He said he didn't want to get the dog out, but he would if Vance "ma[d]e" him. *Id.* at 5:57-6:01. Sergeant Leverett repeated that he didn't care if Vance had "a pound

of cocaine," "ten pounds of weed," or "a couple ounces of meth." *Id.* at 6:05-6:11. After Vance said he was "scared to death" of going to jail, Sergeant Leverett increased his promise: "I tell you what. I'll tell you [with] one hundred percent certainty. You give me everything right now, I won't lock you up **tonight**. Promise ya. Hand to God, on body cam, I won't lock you up **tonight**." *Id.* at 6:26, 6:39-6:51 (emphases added).

[6] Sergeant Leverett asked Vance for his consent to search the motel room, and Vance consented. *See* Tr. Vol. 3 p. 13.[3] Sergeant Leverett confirmed with Vance that he hadn't "promised or coerced" him and that he had treated him "with respect," and Vance responded that Sergeant Leverett had been "decent." Ex. 11 at 8:22-8:31. Sergeant Leverett again told Vance that if he gave him "everything"—even if it was a "pound of meth"—he wouldn't lock him up "tonight." *Id.* at 9:15-9:22. Vance asked Sergeant Leverett if he would lock him up "tomorrow," and Sergeant Leverett responded that he wouldn't lock him up "tomorrow either." *Id.* at 9:24-9:26. Before Vance could ask any further

---

[3] Officer Leverett read aloud to Vance a written consent-to-search form, which advised Vance that they were looking for drugs and paraphernalia and that Vance had the right to refuse consent and speak with an attorney before consenting. Vance then signed the form. These events are contained in the unredacted version of the body-cam footage, which the jury did not see. Before trial, the trial court granted Vance's motion in limine, ruling that the signed consent form was inadmissible because it was irrelevant under Indiana Evidence Rule 401. *See* Tr. Vol. 2 pp. 195-201; Appellant's App. Vol. 2 pp. 117-18.

Right before trial started, the State asked the trial court to reconsider its ruling about the signed consent form, which the court denied. The State then made an offer of proof and included for purposes of appellate review the form and the unredacted version of the body-cam footage, which includes footage related to the execution of the consent form. *See* Tr. Vol. 2 pp. 220-23; Ex. pp. 7-8.

questions about when he might be arrested, Sergeant Leverett cut him off, saying they were "not going to play this game." *Id.* at 9:27.

[7] Sergeant Leverett then searched the room and, with Vance's help, found four bags of methamphetamine, pills (Viagra and Adderall), marijuana, and drug paraphernalia. After collecting the evidence, Sergeant Leverett and his partner left Vance's motel room without arresting him.

[8] The next day, May 2, the State charged Vance with 26 offenses, including Level 2 felony dealing in methamphetamine, and being a habitual offender (the State later amended the charging information, reducing the number of offenses to 20). An arrest warrant was issued on May 6, five days after the search of Vance's motel room. Vance was arrested on the warrant in November 2024.

[9] A jury trial was held in May 2025. During Sergeant Leverett's testimony, Vance moved to suppress all the drug evidence found in his motel room, arguing that the officers illegally entered and searched his room in violation of Article 1, Section 11 of the Indiana Constitution. A suppression hearing was held outside the presence of the jury. Sergeant Leverett explained that he and his partner went to Vance's motel room shortly before 3:00 a.m. because his partner had received "some information from a cooperative source," which his partner had relayed to him when their shift began at 9:30 p.m. Tr. Vol. 2 p. 239. Sergeant Leverett didn't know when his partner had received the information and didn't explain why they waited until almost 3:00 a.m. to go to Vance's motel room. The partner did not testify. The court denied the motion to suppress, and trial

resumed. The body-cam footage was admitted into evidence and played for the jury. After several counts were dismissed (including the habitual-offender allegation) and some guilty verdicts were vacated, the trial court entered judgment of conviction for Level 2 felony dealing in methamphetamine, two counts of Level 6 felony unlawful possession of a legend drug, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. The court sentenced Vance to an aggregate term of 25 years, with 5 years suspended to probation.

[10] Vance now appeals.[4]

## Discussion and Decision

[11] Vance contends that the trial court erred in admitting the drug evidence found in his motel room. The trial court generally has broad discretion in ruling on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). However, when a challenge to the admissibility of evidence is based on the constitutionality of a search or seizure, our review is de novo. *Id.*

[12] Vance argues that his rights under the Indiana Constitution were violated by the officers' entry into and subsequent search of his motel room. Article 1, Section 11 provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated

---

[4] We held oral argument at Mishawaka High School on April 30, 2026. We thank the high school for its hospitality and the parties for their helpful advocacy.

. . . ." Although Article 1, Section 11 is worded similarly to the Fourth Amendment, we interpret it independently and give it a "liberal construction," asking "whether the State has shown that a particular search or seizure was reasonable based on the totality of the circumstances." *Ramirez v. State*, 174 N.E.3d 181, 191 (Ind. 2021); *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In some cases, Article 1, Section 11 "confers greater protections to individual rights than the Fourth Amendment affords." *Shotts v. State*, 925 N.E.2d 719, 726 (Ind. 2010).

[13] In determining whether the State has shown that a particular search or seizure was reasonable based on the totality of the circumstances, we employ the framework provided in *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005). Although there may be other relevant considerations, we evaluate the reasonableness of a law-enforcement officer's search or seizure by balancing three factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361. "This totality-of-the-circumstances test is our faithful stand-by to determine reasonableness under our Constitution" and is "appropriate for a range of contexts." *Watkins v. State*, 85 N.E.3d 597, 600 (Ind. 2017) (quotation omitted). "When weighing these factors as part of our totality-of-the-circumstances test, we consider the full context in which the search or seizure occurs." *Hardin v. State*, 148 N.E.3d 932, 943 (Ind. 2020). Because the officers' entry into Vance's motel room and their subsequent search of it were a continuous course of

conduct, we evaluate them together rather than as discrete intrusions. *See id.* (explaining that in *Austin v. State*, 997 N.E.2d 1027 (Ind. 2013), the court "examin[ed] the challenged traffic stop and search as part of the longer chain of interactions between the defendant and law enforcement around the time of the stop and search").[5]

[14] When considering the degree of concern, suspicion, or knowledge, "courts consider the reasonableness of the officers' assumptions, suspicions, or beliefs based on the information available to them at the time." *Nance v. State*, 216 N.E.3d 464, 483 (Ind. Ct. App. 2023) (quotation omitted). The encounter here was what is commonly called a "knock and talk"—police approaching a residence to make consensual contact with the occupant. According to the probable-cause affidavit, Sergeant Leverett's testimony at the suppression hearing, and the attorneys' arguments at that hearing, a traffic stop had occurred in which the person stopped told police they had purchased methamphetamine from Vance at Room 112 at the Holiday Motel. Sergeant Leverett's partner relayed this tip to him when their shift began at 9:30 p.m. Standing alone, the tip was specific as to person, place, and substance. But the record does not establish when the traffic stop occurred, how reliable the informant was, or why the officers waited more than five hours before going to Vance's door. Sergeant Leverett told Vance only that they had received a

---

[5] Vance also argues that his Fourth Amendment rights were violated because (1) the knock and talk was invalid and (2) he did not voluntarily consent to the search. Because we find a violation of Article 1, Section 11, we do not address the Fourth Amendment.

"complaint" without disclosing its nature. Had the officers regarded the tip as establishing a high degree of concern, presumably they would have acted sooner or sought a warrant. Their decision to do neither suggests they did not view the tip as particularly urgent. The degree of concern, suspicion, or knowledge was low.

[15] We evaluate the degree of intrusion from the defendant's point of view, considering "the intrusion into both a defendant's physical movements and privacy, focusing on how officers conducted the search or seizure." *Ramirez*, 174 N.E.3d at 192. In addition, as our Supreme Court has explained, "a defendant's consent to the search or seizure is relevant to determining the degree of intrusion." *Hardin*, 148 N.E.3d at 944.

[16] While this Court has held that "approaching a front door and asking basic identifying questions is minimally invasive," *Corbett v. State*, 179 N.E.3d 475, 487 (Ind. Ct. App. 2021), *trans. denied*, that is not what happened here. A knock-and-talk is permissible only because police, like any member of the public, have an implied license to use "normal routes of ingress and egress to make appropriate inquiries of the occupants." *State v. Hendricks*, 254 N.E.3d 1127, 1132 (Ind. Ct. App. 2025) (quotation omitted). The resident is not obligated to answer, and "when the knock is not answered, officers generally must leave and secure a warrant if they want to pursue the matter." *Id.* (quotation omitted). The officers here exceeded that license. They knocked on Vance's door at nearly 3:00 a.m., which is not a time when uninvited visitors are impliedly welcome. *See id.* (finding that an officer's approach of a house at 11:30 p.m. to

ask questions was "not a time when people expect to be disturbed by uninvited visitors"). The officers were in full uniform and shone a flashlight on Vance as he cracked open the door wearing only boxers. Sergeant Leverett did not tell Vance why he was there before asking to come inside. This doesn't appear to have been a knock and talk at all but rather a guise to enter. The manner of the entry alone pushes the intrusion past minimal.

[17] Although Vance said yes when Sergeant Leverett asked if he could enter, the officers' conduct once inside compounded the intrusion. Sergeant Leverett observed marijuana and paraphernalia, told Vance he was not free to leave, and advised him of his *Miranda* rights. Sergeant Leverett warned Vance that a drug dog was waiting in the car and that things would go "downhill" if he was not forthcoming. *See McIlquham v. State*, 10 N.E.3d 506, 512 (Ind. 2014) (explaining that "consent is invalid if police assert that they **will get** a warrant regardless of consent, as though a warrant were a foregone conclusion—though merely stating that they will **seek** a warrant may be permissible"). Although Sergeant Leverett had just told Vance he was not free to leave, he then promised, with "one hundred percent certainty," "Hand to God, on body cam," that Vance would not be arrested that night if he gave the officers "everything." Only after those warnings and assurances did Sergeant Leverett present Vance with a written consent-to-search form advising him of the right to refuse and to consult an attorney. Although a defendant's consent to search is relevant to determining the degree of intrusion, *see Hardin*, 148 N.E.3d at 944, it is not dispositive. Rather, the pertinent point for Article 1, Section 11 is how the

officers conducted the search or seizure. *See Ramirez*, 174 N.E.3d at 192. Here, by the time the form was placed in front of Vance, his consent operated less as an authorization than as a ratification of an entry that had already produced the evidence used to pressure his consent. The degree of intrusion was at least moderate and arguably high.

[18]     Finally, police have a strong need to investigate criminal activity, including drug offenses. *See Nance*, 216 N.E.3d at 484. But the less serious the offense that is being investigated, the less strong the need is. *See id.* ("Police had no evidence of any offense other than possible marijuana possession when they first entered Nance's home to detain him."). Based on the tip here, the officers were investigating drug dealing rather than mere possession, which weighs in the State's favor on seriousness. But the officers' own conduct cuts the other way. Sergeant Leverett's partner told him about the tip when their shift began at 9:30 p.m., yet the officers waited more than five hours before going to Vance's door, and Sergeant Leverett offered no explanation for why a warrant wasn't sought in the meantime. *See Crabtree v. State*, 199 N.E.3d 410, 417 (Ind. Ct. App. 2022) (officers' need to enter motel room without warrant was low where they "had time to secure a warrant"); *Hendricks*, 254 N.E.3d at 1132 (need to ask questions "in the middle of the night" about an incident that occurred several days earlier was "minimal"). The law-enforcement need was at most modest.

[19]     Weighing the three *Litchfield* factors, we conclude that the State has not shown that the officers' entry into and subsequent search of Vance's motel room were reasonable under the totality of the circumstances. The officers' degree of

concern, suspicion, or knowledge was low; the intrusion was at least moderate and arguably high—a uniformed, flashlight-illuminated knock at nearly 3:00 a.m. without any statement of purpose, followed by an officer's promise of non-arrest used to obtain consent to search; and the law-enforcement need was at most modest given the officers' own decision to wait several hours without seeking a warrant. The balance tips against the State. We therefore hold that the officers' entry into and subsequent search of Vance's motel room violated Article 1, Section 11 of the Indiana Constitution, and that the trial court erred in admitting the drug evidence found in Vance's motel room. The error was not harmless; without that evidence, there is nothing left to support his convictions. We therefore reverse Vance's convictions.

[20] Reversed.

DeBoer, J., concurs.

Tavitas, C.J., concurs in result with separate opinion.

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Caroline G. Templeton
Assistant Section Chief, Criminal Appeals

John R. Oosterhoff
Deputy Attorney General

Mia R. Roberts
Certified Legal Intern
Indianapolis, Indiana

**Tavitas, Chief Judge, concurring in result.**

[21] I respectfully concur in result with the majority's opinion. I agree that Vance's rights under the Indiana Constitution were violated by the officers' entry into and subsequent search of his motel room, and I agree with the reversal of his convictions. Although I reach the same result as the majority, I analyze the issue in a different manner.

[22] Our Supreme Court has recognized that "[m]any search and seizure issues are resolved in the same manner under both the Indiana and Federal Constitutions." *State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015). Under both the United States Constitution and the Indiana Constitution, "it is axiomatic that a search requires a warrant unless certain narrow exceptions apply." *Id.*

[23] One "such exception is consent, since a 'search based on lawful consent is consistent with both the Indiana and Federal Constitutions.'" *Id.* (quoting *Campos v. State,* 885 N.E.2d 590, 600 (Ind. 2008)). "'Under both the Fourth Amendment and the Indiana Constitution, the State carries the burden of proving that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.'" *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014) (quoting *Campos,* 885 N.E.2d at 600) (internal quotations omitted). "'Voluntariness is a question of fact to be determined from all the circumstances.'" *Id.* (quoting *Campos,* 885 N.E.2d at 600). "'[A] consent to search is valid except where procured by fraud, duress, fear, or intimidation or

where it is merely a submission to the supremacy of the law.'" *Id.* (quoting *Joyner v. State,* 736 N.E.2d 232, 242 (Ind. 2000)).

[24] In determining whether consent to a search is voluntary, we look to the factors derived from the United States Supreme Court's opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), **which include, but are not limited to, the following considerations**:

> (1) whether the defendant was advised of his *Miranda* rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search.

*McElroy v. State*, 133 N.E.3d 201, 209 (Ind. Ct. App. 2019) (quoting *Crocker v. State*, 989 N.E.2d 812, 820 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied*. If we find, as here, that consent to the search was not voluntary, then the search is unconstitutional, and our analysis is concluded.

[25] Our Supreme Court looked to the voluntariness of a consent to search in both *Campos*, 885 N.E.2d at 600, and *McIlquham*, 10 N.E.3d at 512, without performing a *Litchfield* analysis. In *Campos*, the Court analyzed whether a defendant's consent to a search was valid under both the Indiana Constitution and the United States Constitution. The Court concluded that the defendant's

consent was defective and suppressed evidence seized from the vehicle. The Court concluded that the search violated both Article I, Section 11 of the Indiana Constitution and the Fourth Amendment. *Campos* was handed down after *Litchfield*, and our Supreme court did not analyze the *Litchfield* factors in considering whether the defendant's consent was valid.

[26] Similarly, in *McIlquaham*, 10 N.E.3d at 512, the defendant expressly consented to the search of his home after his toddler was found wandering outside. The Court concluded that the search did not violate Article I, Section 11 of the Indiana Constitution or the Fourth Amendment. As with *Campos*, although *McIlquaham* was handed down after *Litchfield*, our Supreme Court did not analyze the *Litchfield* factors in considering whether the defendant's consent was valid.

[27] I recognize that this court has "expressed divergent views with respect to whether the *Litchfield* analysis is necessary where we find a valid exception to the warrant requirement." *Bauman v. State*, 207 N.E.3d 1249, 1256 n.9 (Ind. Ct. App. 2023) (citing *Isley v. State*, 202 N.E.3d 1124, 1134 (Ind. Ct. App. 2023) (May, J. concurring in part), *trans. denied*), *trans. denied*; *cf. Isley*, 202 N.E.3d at 1130 n.3 (collecting cases). My view differs from that of the majority. First, we determine if there is a valid consent. If the consent is valid, then we perform a *Litchfield* analysis to determine the reasonableness of the search. Here, the State failed to meet its burden to prove Vance's consent to search was voluntary given the factors outlined in *Bustamonte*. I conclude that the consent was not valid, and accordingly, we need not "undertake a *Litchfield* analysis." *Id.* I

would, however, reach the same result as the majority—reversal of Vance's convictions. Accordingly, I concur in result.