ATTORNEY FOR APPELLANT
William T. Myers
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 07 2017, 3:50 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 27S02-1703-CR-170

WILL THOMAS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Grant Superior Court, No. 27D01-1404-FA-5
The Honorable Jeffrey D. Todd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 27A02-1602-CR-374

**September 7, 2017**

**David, Justice.**

Will Thomas was found guilty of Class A felony dealing in a narcotic drug, and now appeals his conviction under the Fourth Amendment to the United States Constitution. For the reasons discussed herein, we find Thomas's arrest was lawful and the evidence recovered was admissible. Accordingly, we affirm the trial court's conviction.

**Facts and Procedural History**

This case arose from an arrest for dealing in narcotic drugs. On April 7, 2014, the Joint Effort Against Narcotics ("JEAN") Team Drug Task Force, which included officers from the City of Marion Police Department and the Grant County Sheriff's Office, received a tip from a credible confidential informant that two men from Chicago were travelling to Grant County to sell drugs. The informant told JEAN officers that the two men were driving a white minivan with a temporary Illinois license plate, and could be found at the Comfort Suites in Marion, Indiana.

Upon receiving this information, Detective Mark Stefanatos ("Detective Stefanatos") began surveillance of a Dodge Caravan that fit the confidential informant's description. While there, he observed two men, later identified as Will Thomas and Byron Christmas, enter the vehicle and drive away.

Detective Stefanatos followed the van and observed it illegally change lanes without properly signaling. Detective Stefanatos then called for a uniformed police officer, Joseph Martin ("Officer Martin"), to initiate a traffic stop. He also called for a canine unit on the scene, which arrived within a minute or two.

Officer Martin initiated the stop and approached the vehicle with Detective Stefanatos. Officer Martin walked to the driver's side of the vehicle and spoke with Christmas while Detective Stefanatos spoke with Thomas, who was sitting in the front passenger seat. The officers tried to verify each man's identity and their reason for travelling through Marion, Indiana. Both Thomas and Christmas told officers that they were visiting family, but neither man could identify where in Indiana their respective family members lived. Furthermore, the driver, Christmas, was unable to present officers with any form of identification and claimed he left his driver's license in Chicago.

Simultaneous to the traffic stop, officers ran a certified narcotics canine around the vehicle with the occupants still inside. The officers first brought the canine to the vehicle's rear bumper and had it sniff along the driver's side. When the canine reached the driver's door, it alerted officers to the presence of narcotics. Officers removed Thomas and Christmas from the

vehicle and conducted a pat-down search for officer safety. No drugs or weapons were found in the course of the pat-down.

Christmas then gave officers permission to search the vehicle. The canine was brought into the vehicle's interior, but it no longer detected the presence of narcotics. No narcotics or contraband were found in a subsequent search of the vehicle's interior. Officers did not bring the narcotics detection canine around the suspects because the canine was also trained as an apprehension dog. Bringing the dog around the suspects ran the risk of causing them injury if either of the suspects turned out to possess contraband.

Christmas and Thomas were each asked whether they would consent to a strip search at the police station. Christmas agreed and was transported to the county jail where no drugs were found on his person. Officers did, however, find Christmas had $750 in cash. Thomas, on the other hand, declined the search. Given Thomas's refusal to consent, officers applied for a search warrant. In the meantime, they transported Thomas to the Marion Police Station where he would await the results of the search warrant request. Officers said they transported Thomas because they preferred to conduct the search somewhere other than a public roadway. They also expressed concern about the destruction of evidence if Thomas were not transported to the police station.

Upon arrival at the station, Thomas was placed in an interview room, which was equipped with video monitoring equipment. Officers left Thomas alone in the room and continued to observe him remotely. Moments later, Thomas was seen removing something from his jacket pocket and placing it in his mouth. Officers re-entered the room to retrieve what Thomas had placed in his mouth. When Thomas refused to comply, officers forced his mouth open and retrieved a small plastic baggie containing 8.5 grams of a gray, crumbly, rock-like substance. The substance later tested positive for heroin.

Thomas was charged with Class A felony dealing in a narcotic drug and Class B misdemeanor battery. Prior to trial, Thomas moved to suppress evidence recovered at the police station, alleging officers lacked probable cause to detain him. The trial court denied Thomas's motion. After a two-day jury trial, Thomas was found guilty of dealing in a narcotic drug, but not guilty of battery. Thomas appealed.

In a published opinion, the Court of Appeals reversed Thomas's conviction, finding that police violated Thomas's Fourth Amendment rights when they detained and transported him to the police station to await a search warrant. Thomas v. State, 65 N.E.3d 1096, 1103 (Ind. Ct. App. 2016), transfer granted, opinion vacated, 2017 WL 1160999 (Ind. Mar. 23, 2017). The Court of Appeals further found that the trial court erred in not excluding evidence obtained during that detention. Id.

The State then sought transfer. Pursuant to Indiana Appellate Rule 58(A), we granted transfer, thereby vacating the Court of Appeals' opinion.

**Standard of Review**

Thomas did not seek interlocutory review of the trial court's denial of the suppression motion; instead, the matter proceeded to trial. Thus, we consider this appeal a request to review the trial court's decision to admit evidence. Carpenter v. State, 18 N.E.3d 998, 1001 (Ind. 2014) (citing Guilmette v. State, 14 N.E.3d 38, 40 (Ind. 2014)). The trial court has broad discretion to rule on the admissibility of evidence. Guilmette, 14 N.E.3d at 40. Rulings on the admissibility of evidence are reviewed for an abuse of discretion and ordinarily reversed when admission is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997). However, when a challenge to such a ruling is predicated on the constitutionality of the search or seizure of evidence, it raises a question of law that we review *de novo*. Kelly v. State, 997 N.E.2d 1045, 1050 (Ind. 2013) (internal citations omitted).

**Discussion**

Thomas does not dispute the legality of most activities carried out by law enforcement on the day of his arrest. As a starting point, he agrees officers initiated a lawful traffic stop for failure to signal while changing lanes. Thomas also concedes the legality of the canine unit's use, the search of the vehicle's interior, and the brief detention on the side of the road, which included a pat-down search.

Instead, Thomas argues that officers lacked probable cause to transport him to the police station because, although a positive canine alert undoubtedly gives officers probable cause to search a vehicle, it does not create probable cause to search any of the vehicle's occupants or to

detain them. Thomas argues that when he was taken to the police station and placed in an interrogation room, he was being held in violation of his Fourth Amendment rights; therefore, any evidence recovered should be deemed inadmissible.

The State disagrees, arguing that the canine's positive alert, when coupled with the subsequent "ruling out" of the vehicle, provided officers with the probable cause they needed to detain both occupants. Thus, according to the State, when Thomas was observed placing the contraband in his mouth, he was lawfully detained and any evidence recovered in that instance was properly admitted.

As an initial matter, we note that Thomas's argument is partly misplaced. Whether probable cause to *search the vehicle* gave officers probable cause to *search the occupants* is irrelevant. Aside from a roadside pat-down that Thomas concedes was lawfully administered, Thomas was not searched. The contraband that officers recovered, which Thomas now claims was inadmissible under the exclusionary rule, was observed by officers while Thomas was being held in the interrogation room. Thus, the pertinent question is more accurately framed as whether probable cause to detain Thomas and transport him to the police station arose at any point during the traffic stop. However, before we make that determination, we must first dispense with whether, at the time Thomas placed the baggie in his mouth, he was in custody for purposes of our analysis.

## I. Thomas was in custody when he was transported to the police station.

An arrest arises when the taking or seizure of a person occurs in a way that deprives, interrupts, or restricts the person of her liberty or freedom of movement. Sears v. State, 668 N.E.2d 662, 667 (Ind. 1996); Armstrong v. State, 429 N.E.2d 647, 651 (Ind. 1982). Determining whether a person was in custody or deprived of her freedom requires an inquiry into whether there was a formal arrest or restraint on freedom of movement to a degree associated with a formal arrest. Luna v. State, 788 N.E.2d 832, 833 (Ind. 2003) (citing California v. Beheler, 463 U.S. 1121, 1125 (1983)). The inquiry utilizes an objective test that asks whether a reasonable person under the same or similar circumstances would believe she was not free to resist the entreaties of the police. Sellmer v. State, 842 N.E.2d 358, 363 (Ind. 2006).

Here, Thomas was first asked whether he was willing to consent to a strip search. When he declined to give consent, officers informed Thomas that if he declined, he would be transported to the police station to await the results of a search warrant request. The record makes clear Thomas was given only two choices: either 1) consent to the strip search, or 2) be detained at the police station until a judge made a determination on the search warrant. No reasonable person under those circumstances would believe a third choice was available: one in which he was free to walk away from police officers at will. Accordingly, we find that when Thomas was transported from the scene of a lawful traffic stop to await the results of a search warrant request at a police station, he was in custody.

## II. Thomas was lawfully detained when officers observed him placing a plastic baggie in his mouth.

Given the nature of the encounter between Thomas and officers, we turn to the Fourth Amendment, which regulates all nonconsensual encounters between citizens and law enforcement officials. Finger v. State, 799 N.E.2d 528, 532 (Ind. 2003). The Fourth Amendment guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). The Fourth Amendment's prohibition on unreasonable searches and seizures applies not only to searches and seizures of property, but also to physical apprehension of persons, such as arrests. Roberts v. State, 599 N.E.2d 595, 598 (Ind. 1992). In general, police must have a warrant to make an arrest. Herring v. United States, 555 U.S. 135, 136 (2009). An officer may, however, arrest a suspect without a warrant if he observes the suspect committing a crime, or if the officer has probable cause to believe that the suspect has committed a felony. Sears, 668 N.E.2d at 666-67 (citing Tennessee v. Garner, 417 U.S. 1, 7 (1985)). Officers here did not observe Thomas or Christmas in possession of contraband and a search of the vehicle's interior turned up empty. Thus, to lawfully seize Thomas at the traffic stop, transport him to the police station, and detain him in the interrogation room pending the

6

search warrant request results, officers needed probable cause to believe he possessed contraband.[1]

Probable cause to arrest arises when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances, which would warrant a person of reasonable caution to believe that the defendant committed the criminal act in question. Sears, 668 N.E.2d at 667 (citing Green v. State, 461 N.E.2d 108, 112 (Ind. 1984). The amount of evidence necessary to satisfy the probable cause requirement for a warrantless arrest is evaluated on a case-by-case basis. Peterson v. State, 674 N.E.2d 528, 536 (Ind. 1996), reh'g denied, cert. denied, 522 U.S. 1078 (1998). Rather than requiring a precise mathematical computation, probable cause is grounded in notions of common sense. Ogle v. State, 698 N.E.2d 1146, 1148 (Ind. 1998) (citing Illinois v. Gates, 462 U.S. 213, 235-36 (1983)).

To determine whether probable cause arose at any point during the traffic stop, we first turn to guidance from the ultimate authority on federal constitutional matters: the United States Supreme Court. The parties direct our attention to the U.S. Supreme Court's case in Maryland v. Pringle, 540 U.S. 366 (2003). Unfortunately, we find that neither Pringle, nor any other Supreme Court case discussing probable cause, address the precise facts presented in this case – i.e., where suspects are detained after a trained canine alerts to the presence of narcotics in a vehicle while the suspects are inside, the suspects are removed, and an interior search of the vehicle is fruitless.

In Pringle, police conducted a lawful traffic stop for speeding, and officers were given consent to search the vehicle. Id. at 368. But unlike the case at bar, officers in Pringle actually found cocaine and cash in the glove compartment. Id. Police arrested all three occupants – the driver and two passengers. Id. at 368-69. The question the Court faced was whether the defendant's mere presence in the vehicle as a passenger created probable cause to believe he had committed a crime. The Court said yes, finding "it an entirely reasonable inference from these

---

[1] Fourth Amendment jurisprudence makes clear that a search incident to an arrest is permissible where the arrest is lawful. Sears, 668 N.E.2d at 666. Presumably, officers could have searched Thomas upon arrest, after establishing probable cause. But for reasons we will not attempt to rationalize, officers chose not to conduct a search incident to arrest. Instead, they sought to legitimize their search in the eyes of the law by obtaining a search warrant. Thus, the only question before us is whether, at the time Thomas was detained in the interrogation room, such detention was lawful – in other words, supported by probable cause.

7

facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." Id. at 372. While Pringle does not directly answer the question presented here, its holding is helpful to the extent that it instructs us that officers may arrest any and all occupants of a vehicle, provided probable cause exists to believe a crime has been committed.[2] We take the principles espoused by the U.S. Supreme Court and we seek further guidance in our own state's precedent to determine whether probable cause existed.

In searching through our own jurisprudence, we find our Court has also not yet addressed the question directly. The closest we came to addressing the question was in State v. Hobbs, 933 N.E.2d 1281, 1286 (Ind. 2010), where we cited U.S. Supreme Court precedent, but only to hold that a dog sniff on a vehicle was not a "search" triggering the Fourth Amendment's warrant requirement. That is not quite the question we now confront.

The Court of Appeals, on the other hand, has addressed the question twice, although in each instance they have reached opposite results. The latest decision on the issue happens to be the case before us. There, the Court of Appeals cited a lack of probable cause for the arrest as the reason for finding the evidence inadmissible. Prior to that, in Richard v. State, 7 N.E.3d 347, 349-50 (Ind. Ct. App. 2014), our Court of Appeals found that probable cause existed.

The facts in Richard are substantially similar to the ones presented here. Officers conducted a traffic stop when they observed a vehicle in front of them repeatedly cross the center line. Id. at 348. Two occupants were seated in the front of the vehicle – Christopher Fields was in the driver's seat and the defendant, Charla Richard, sat in the passenger side. Id. Officers recognized both occupants and arrested Fields on the basis of an outstanding warrant. Id. Then, with Richard still seated inside, a canine trained in narcotics detection was passed around the vehicle and it alerted officers to the presence of narcotics near the driver's door. Id. Officers asked Richard to exit the vehicle and they conducted a search. Id. As they searched, officers noticed Richard favored one side. Id. When she was asked to raise her right arm, a small tin containing meth fell out of her shirt and onto the ground. Id. Richard was arrested and she moved to suppress the evidence obtained from the search under both the federal and state constitution. Id. The trial court denied the motion, and she was subsequently convicted. Id.

---

[2] An exception to this rule is where one occupant is "singled out" as the culprit. In such a scenario, probable cause to search and seize other vehicle occupants may not exist. See United States v. Di Re, 332 U.S. 581, 593 (1984).

The Court of Appeals affirmed her conviction, finding, in part, that the canine's alert provided probable cause to believe there were drugs in the vehicle. Id. at 349-50.

The State contends that we should heed the reasoning of our Court of Appeals in Richard and adopt a rule that allows for the arrest of a vehicle's occupants where there is probable cause to believe that the occupants possess drugs. To the extent that this is the rule in Richard, we are inclined to agree with the State, but we depart from the Richard panel on the amount of evidence needed to establish probable cause. We rely on numerous facts to make a probable cause determination, not just the canine's alert. In fact, we believe it is unlikely that any of the facts presented here would have, on their own, armed officers with the probable cause necessary to conduct a lawful arrest. The case we are presented with, however, offers much more than a single canine alert to support a probable cause finding.

Officers had knowledge of facts and circumstances which would warrant a person of reasonable caution to believe that Thomas was in possession of narcotics. Here, a reliable confidential informant provided officers with specific information about illicit activities being carried out and offered a detailed description of the vehicle involved. Officers had the opportunity to confirm that description when they arrived at the hotel. Then, when officers legally pulled the vehicle over, Thomas seemed nervous, raising the specter of suspicion that criminal activity was afoot. Heightening officers' suspicions were the inconsistent answers Thomas and Christmas gave officers about their travel through the county; neither could identify where the family members they were visiting lived. Thomas's companion was also traveling across state lines without a license or any other form of identification, which officers knew from their experience is often true of drug dealers transporting contraband. Finally, tipping the scale from reasonable suspicion into probable cause, a trained canine alerted the officers to narcotics in the vehicle while the occupants were inside, and then no longer detected narcotics in the vehicle when the occupants were removed. At that point, the sum of those facts would warrant a reasonable person to believe at least one of the two occupants took the drugs with him when he exited the vehicle and likely still possessed the narcotics.

Despite Thomas's attempt to trivialize this last point as "process-of-elimination," we think the inference created when the canine sensed narcotics and then ceased sensing them upon

9

the occupants' exit from the vehicle is a key component of a probable cause finding. We agree that the canine alert, by itself, may not have been enough to give officers probable cause to arrest Thomas. But here, officers already had high suspicions and solid reason to believe that criminal activity was afoot. Then, a highly trained canine alerted to the presence of narcotics while the suspects were inside the vehicle, but it no longer detected the narcotics when the suspects were not inside. Knowing the facts available to the officers and the inferences drawn from a combination of the canine alert and subsequent absence of alert, common sense dictates that someone moved the contraband between sniffs. The totality of these circumstances convinces us that officers had knowledge of facts and circumstances which would warrant a reasonable person to believe one of the two occupants took the drugs with him when he exited the vehicle and likely still had them on his person.

In sum, we're convinced officers met the probable cause threshold necessary to detain Thomas. What occurred here is an example of good policing in a difficult situation. Officers did everything by the book – they made a lawful stop after observing a lane change without signaling; they ran a trained canine simultaneous to the lawful stop, so as to not change the character of the stop; and after being alerted to the presence of narcotics in the vehicle, they asked for and received consent to search the interior. Then, rather than risk the suspect being bitten by the apprehension canine, they transported the suspect to the police station and applied for a search warrant – a step that was, in hindsight, likely unnecessary since they had already attained the requisite probable cause to arrest Thomas and could have conducted a search incident to arrest. It was while being lawfully detained that Thomas was observed with the illicit contraband. We agree with the State in that a finding adopting Thomas's argument – one in which officers with a mountain of facts pointing to the existence of crime have no alternative but to let suspects walk free because a search cannot be conducted at the site of the traffic stop – would place an untenable burden on officers after probable cause for criminal activity has already been established.

**Conclusion**

The totality of the circumstances presented here convinces us that officers had probable cause to believe Thomas was in possession of narcotics. Therefore, transporting him to, and detaining him at, the police station to await the results of the search warrant request did not run

afoul of the Fourth Amendment. When Thomas was observed putting the plastic baggie containing a narcotic drug into his mouth, he was lawfully detained. Any evidence recovered in that instance cannot be said to be "fruit of the poisonous tree," and its admission did not violate Thomas's Fourth Amendment rights. Accordingly, we affirm the trial court's decision to admit the evidence and we reinstate Thomas's conviction.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.