## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2018, 8:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

J. Michael Woods
Paul G. Stracci
Stracci Criminal Defense
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Clarence Toschlog, *Appellant-Defendant,* | February 13, 2018 |
| v. | Court of Appeals Case No. 64A03-1707-CR-1586 |
| | Interlocutory Appeal from the Porter Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable David L. Chidester, Judge |
| | Trial Court Cause No. 64D04-1608-CM-7767 |

**Bailey, Judge.**

# Case Summary

John Clarence Toschlog ("Toschlog") brings this interlocutory appeal of the trial court's order denying his motion to suppress evidence obtained as a result of a search of his vehicle. Toschlog raises two issues, which we restate as follows:

> Whether the search of Toschlog's vehicle was unreasonable under the Fourth Amendment and/or Article 1, Section 11 of the Indiana Constitution where the traffic stop for an equipment violation was delayed for a dog sniff based solely on Toschlog's admission that the vehicle, while in the State of Washington, contained marijuana.

We affirm.

# Facts and Procedural History

Just after midnight on August 22, 2016, Valparaiso Police Officer Ryan Sobierajski ("Officer Sobierajski") was on patrol when he noticed a vehicle with one unilluminated headlight. Officer Sobierajski initiated a traffic stop of the vehicle at 12:04 a.m. He approached the vehicle and explained the reason for the stop. Toschlog was the driver of the vehicle, which also contained a female passenger, a dog, and a large amount of luggage consistent with a long road trip. In response to the officer's questions, Toschlog stated that he and the passenger were coming from the state of Washington and were headed to Warsaw, Indiana. When asked if there were any drugs in the vehicle, Toschlog answered no. Officer Sobierajski then asked if there had previously been any

drugs in the vehicle, and Toschlog responded that there had been marijuana in the vehicle when they were in Washington and that recreational marijuana is legal there. Officer Sobierajski did not detect any odor of marijuana coming from the vehicle, Tr. Vol. I at 17,[1] nor did he observe any evidence of consumption or possession of marijuana, *id*. at 18-19.

[4] Approximately one minute after approaching Toschlog's vehicle, Officer Sobierajski returned to his police car with Toschlog's driver's license and registration document. "Based on [Toschlog's] answers" to Officer Sobierajski's questions, the officer called for a canine officer to respond to his location to perform a dog sniff of Toschlog's car. Tr. Vol. 1 at 11; *see also id*. at 18-19 (Officer Sobierajski testified that, "[b]y [Toschlog] admitting" that "there had previously, in another state, legally been marijuana in the vehicle[,]" that "gave [Officer Sobierajski] suspicion that there was currently marijuana in the vehicle."). "While waiting [for the canine unit] to arrive on the scene," Officer Sobierajski entered Toschlog's "driver's information" into the computer system in his vehicle, attempted to look up Toschlog's prior criminal history, and "kept an eye on the occupants of [Toschlog's] vehicle." *Id*. at 12. At 12:09 a.m., Officer Sobierajski received from dispatch information confirming Toschlog's driver's license and registration. Officer Sobierajski did not intend to write a

---

[1] We refer to the transcript of the April 13, 2017, hearing as transcript volume one ("Tr. Vol. 1"), and the transcript of the continued hearing on May 16, 2017, as transcript volume two ("Tr. Vol. II").

ticket and/or return Toschlog's driver's license to him until the canine unit arrived to conduct a dog sniff of Toschlog's vehicle. *Id.* at 55.

[5]    At 12:10 a.m., Sergeant Jerame Simpson ("Sgt. Simpson") arrived on the scene with his canine. Per his general practice when a dog is in the vehicle to be sniffed, Sgt. Simpson requested that Toschlog, his passenger, and their dog all exit the vehicle and stand at a distance on the side of the road while the police dog conducted the sniff. It was necessary to have them all exit the vehicle to prevent the police dog from being distracted by the other dog. The officer who did the traffic stop "still need[ed] to be performing the duties of their traffic stop while [Sgt. Simpson was] performing the canine sniff." Tr. Vol. II at 9. However, Officer Sobierajski ceased processing the traffic stop while he stood with Toschlog by the side of the road during the dog sniff of Toschlog's car.[2]

[6]    The dog alerted, indicating the odor of drugs in the vehicle. At that time— which was approximately fifteen to twenty minutes into the traffic stop— Officer Sobierajski began a search of Toschlog's vehicle. When dispatch radioed for a status check at 12:21 a.m., Sgt. Simpson informed dispatch that the officers were busy with a vehicle search. Another officer arrived on the scene at 12:25 a.m. to assist with the search, and the officers subsequently found a small black bag on the floor of the front passenger seat that contained two

---

[2] Officer Sobierajski testified that, at the time he was standing with Toschlog during the dog sniff, the traffic stop was on-going because he still had to document "driver information, checking criminal history records." Tr. Vol. I at 36-37.

grams of marijuana and some paraphernalia. They also found a backpack on the rear passenger seat containing DMT, a hallucinogenic Schedule I controlled substance, and some paraphernalia. Toschlog acknowledged that all the items belonged to him, and the officers arrested him.

[7] The State charged Toschlog with possession of a controlled substance, as a Class A misdemeanor;[3] possession of marijuana, as a Class A misdemeanor;[4] and possession of paraphernalia, as a Class C misdemeanor.[5] The State did not charge him with an infraction for driving with an unilluminated headlight. Toschlog filed a motion to suppress the evidence found in the search of his car. At the hearing on that motion, Officer Sobierajski testified that it typically takes him "less than ten minutes" to complete a traffic stop for equipment violations, and the average length of such stops was four to four-and-a-half minutes. Tr. Vol. I at 25. Following the hearing, the trial court entered an order denying the motion to suppress, even though it found that there was a five to seven minute delay caused by the dog sniff. Toschlog sought, and the trial court granted, certification of the order denying the motion to suppress for an interlocutory appeal, and we accepted jurisdiction. Ind. Appellate Rule 14(B).

---

[3] Ind. Code § 35-48-4-7(a).

[4] I.C. § 35-48-4-11(b).

[5] I.C. § 35-48-4-8.3(b).

# Discussion and Decision

[8] Toschlog appeals the denial of his motion to suppress the evidence obtained in the search of his vehicle. A trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). Generally, evidentiary rulings are reviewed for an abuse of discretion and reversed when admission is clearly against the logic and effect of the facts and circumstances. *Id*. However, when a challenge to an evidentiary ruling is predicated on the constitutionality of a search or seizure of evidence, it raises a question of law that is reviewed de novo. *Id*. The State has the burden to demonstrate that the measures it used to seize information or evidence were constitutional. *State v. Rager*, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008).

[9] Toschlog raises claims under both the federal and state constitutions. Although the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution contain textually similar language, each must be separately analyzed. *State v. Washington*, 898 N.E.2d 1200, 1205–06 (Ind. 2008).

# Fourth Amendment

[10] The Fourth Amendment "regulates all nonconsensual encounters between citizens and law enforcement officials." *Thomas*, 81 N.E.3d at 625. It guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[11] "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). However, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Thus, although a dog sniff is not a search requiring any degree of suspicion, *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010), an officer may not use a narcotics detection dog during the course of a traffic stop "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual," *Rodriquez v. United States*, __ U.S. __, 135 S. Ct. 1609, 1615 (2015).

[12] Here, the trial court found the traffic stop was delayed by five to seven minutes to allow the dog to do a narcotics sniff.[6] However, information lawfully

---

[6] The State disputes that the dog sniff caused a delay in the traffic stop. However, it admits that Officer Sobierajski suspended the ordinary inquiries incident to a traffic stop while the dog sniffed the vehicle. Our case law makes it clear that suspending the ordinary activities of a traffic stop to allow for a dog sniff unreasonably prolongs the stop unless the officer has reasonable suspicion of criminal activity justifying the delay. *See, e.g.*, *State v. Gray*, 997 N.E.2d 1147, 1152 (Ind. Ct. App. 2013), *trans. denied*.

obtained during a traffic stop may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation, including a dog sniff. *See, e.g.*, *United States v. Figueroa-Espana*, 511 F.3d 696, 702 (7th Cir. 2007). Therefore, if Officer Sobierajski had obtained information during the traffic stop that gave him reasonable suspicion that Toschlog had drugs in his car, the delay caused by the drug-sniffing dog would be permissible under the Fourth Amendment.

[13] Reasonable suspicion is a less demanding standard than probable cause and:

> "requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *State v. Schlechty*, 926 N.E.2d 1, 7 (Ind. 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "Thus, a reviewing court must examine the totality of circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Bush*[ *v. State*], 925 N.E.2d [787,] 791 [Ind. Ct. App. 2010].

*State v. Gray*, 997 N.E.2d 1147, 1153 (Ind. Ct. App. 2013), *trans. denied*. The "totality of the circumstances" approach to making reasonable suspicion determinations "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation and citation omitted). Such training enables police officers to "formulate certain common-

sense conclusions about human behavior." *Stafford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 385 (2009) (quotation and citation omitted).

[14] Toschlog does not dispute that Officer Sobierajski lawfully initiated the traffic stop due to an unilluminated headlight. In the course of that lawful traffic stop, the officer asked Toschlog if he currently had drugs in the vehicle or had ever had drugs in the vehicle; this questioning was also lawful. *See United States v. Childs*, 277 F.3d 947, 950-51 (7th Cir. 2002) (noting an officer may ask questions unrelated to the traffic stop without having reasonable suspicion of criminal activity). At that point, Toschlog voluntarily admitted to Officer Sobierajski that he had had marijuana in his vehicle while he was in the State of Washington, and that he was driving home from a trip to Washington. Toschlog was under no obligation to answer the officer's questions regarding the past presence of drugs in his vehicle. *See, e.g.*, *Washington*, 898 N.E.2d at 1205; *Graham v. State*, 971 N.E.2d 713, 717 (Ind. Ct. App. 2012), *trans. denied*. His choice to do so and to disclose inculpatory information—i.e., that he had previously had drugs in his car—provided the officer with reasonable suspicion to believe at that point that Toschlog currently had marijuana in his vehicle.[7] It

---

[7] Toschlog notes that it is legal to possess marijuana for recreational purposes in Washington and contends that his admission to activity that was lawful could not provide the basis for reasonable suspicion of criminal activity. However, it was the *fact* of his past drug possession in his vehicle, not the legality or illegality of it, that reasonably led Officer Sobierajski to reach the common-sense conclusion that Toscholog could have currently had drugs in his vehicle. Moreover, we note that, while the United States Department of Justice is currently operating under an executive non-enforcement policy in the State of Washington for violation of certain federal drug laws, possession of marijuana is still a federal crime under certain circumstances, regardless of state law to the contary. *See West v. Holder*, 60 F.Supp.3d 197, 198 (D.C. Cir. 2015) (citing 21 U.S.C. § 841(a)(1) and Mem. from James M. Cole (Aug. 29, 2013), *available at* http://

was that belief which led Officer Sobierajski to call for a canine unit to do a dog sniff of the vehicle. Thus, any delay caused by the dog sniff was justified by reasonable suspicion of criminal activity. *Rodriquez*, 135 S. Ct. at 1615. The delay did not violate the Fourth Amendment.

# Article 1, Section 11

[15] Toschlog also challenges the delay caused by the dog sniff on state constitutional grounds. Article 1, Section 11 of the Indiana Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[16] The reasonableness of a search and/or seizure under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct *under the totality of the circumstances*." *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016) (emphasis original to *Garcia*) (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). In making this evaluation, we must balance three factors: "1) the [officer's] degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes

---

www.justice.gov/iso/opa/resources/3052013829132756857467.pdf.); *see also*, 21 U.S.C. § 844 (Penalties for simple possession).

on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* (quoting *Litchfield*, 824 N.E.2d at 361).

[17] First, as we held above, Officer Sobierajski had reasonable suspicion that criminal activity was afoot; therefore, the degree of the officer's suspicion or knowledge weighs in favor of the State. *See State v. Parrot*, 69 N.E.3d 535, 545 (Ind. Ct. App. 2017), *trans. denied*. And, although there was some degree of intrusion on Toshclob's ordinary activities from the five to seven minute delay caused by the dog sniff,[8] law enforcement needs in the area of drug trafficking are very high. *See, e.g.*, *State v. Gibson*, 886 N.E.2d 639, 643 (Ind. Ct. App. 2008) (noting the trafficking of illegal drugs is "frequently associated with violence and no simpler method exists for detection of hidden drugs than a dog sniff"). Given the extent of law enforcement needs and the officer's reasonable suspicion that Toschlog's vehicle contained drugs, we hold that the officer's decision to conduct a dog sniff of the vehicle was reasonable under the totality of the circumstances. The delay caused by the dog sniff did not violate Article 1, Section 11.

# Conclusion

[18] The delay caused by the dog sniff of Toschlog's vehicle was reasonable under the Fourth Amendment, as it was based on reasonable suspicion of criminal

---

[8] Although Toschlog was required to exit his vehicle to facilitate the dog sniff, such an intrusion is *de minimus*. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977).

activity. The delay was also reasonable under our state constitution, as the reasonable suspicion of criminal activity and the heightened law enforcement needs in the area of drug trafficking outweighed any intrusion on Toschlog's ordinary activities caused by the five to seven minute dog sniff of the exterior of his vehicle. The trial court did not err in denying Toschlog's motion to suppress.

[19] Affirmed.

Kirsch, J., and Pyle, J., concur.