FILED

Dec 19 2019, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael D. Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 19, 2019<br><br>Court of Appeals Case No.<br>19A-CR-975<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Angela G. Warner Sims, Judge<br><br>Trial Court Cause No.<br>48C01-1602-F5-402 |

**Bailey, Judge.**

# Case Summary

Michael D. Johnson ("Johnson") appeals his conviction for Dealing in a Look-a-like Substance, as a Level 5 felony.[1]  Johnson presents the sole issue of whether the trial court abused its discretion in admitting evidence obtained in violation of his Fourth Amendment right to be free from an unreasonable search and seizure.[2]  We reverse.

# Facts and Procedural History

On November 8, 2015, Brett Eversole ("Eversole") was a gambling patron at the Hoosier Park Casino in Anderson, Indiana.  Eversole reported to a security officer that a black male wearing a white hat had approached him at a gambling machine and asked if he "wanted to buy white girl."  (Tr. Vol. II, pg. 89.)  Eversole assumed "white girl" meant cocaine.  The security officer notified shift supervisor Matt Miller ("Miller"), who notified Gaming Enforcement Agent

---

[1] Ind. Code § 35-48-4-4.6(a)(5).

[2] Johnson briefly references Article 1, Section 11 of the Indiana Constitution, Indiana's search and seizure clause, which is to be interpreted and analyzed independent of the Fourth Amendment to the United States Constitution.  *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008).  However, Johnson does not develop a corresponding argument with respect to the factors to be balanced in determining the reasonableness of a search or seizure under the Indiana search and seizure clause.  *See Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005) (determining that the reasonableness of a search or seizure turns upon a balance of (1) the degree of concern, suspicion, or knowledge that a violation had occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs).  Pursuant to Indiana Appellate Rule 46, Johnson has waived the issue for review.

Zach Wilkinson ("Agent Wilkinson").[3]  Miller also requested video surveillance of the gaming floor.

[3]     Agent Wilkinson reviewed surveillance footage, without audio, and "confirmed the interaction" of approximately thirty seconds between Eversole and a black male wearing a white hat.  *Id.* at 106.  He located Johnson, a black male wearing a white hat, and asked that he come to the gaming enforcement interview room.  When they reached the interview room, Agent Wilkinson advised Johnson that he would "need a pat down."  *Id.* at 111.  Agent Wilkinson detected and removed from Johnson's pocket an object that "felt like a ball of drugs."  *Id.* at 113.  He placed Johnson in handcuffs and provided a *Miranda*[4] warning.

[4]     An Indiana State Police chemist tested the white powder; she identified no drug but detected a chemical possibly derived from baking soda.  On February 29, 2016, the State charged Johnson with Dealing in a Look-a-like Substance.  On April 5, 2017, Johnson filed a motion to suppress the evidence obtained as a result of the warrantless search of his pocket.  On April 24, 2017, the trial court conducted a hearing on the motion to suppress and the parties agreed to submit

---

[3] Agent Wilkinson testified that a gaming enforcement agent has full police powers, including authority to make an arrest.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

briefs regarding their respective positions on admissibility. On October 4, 2017, the trial court denied Johnson's motion to suppress.

[5] Johnson was brought to trial before a jury on January 23, 2019, and he objected to the admission of evidence garnered in the search of his pocket. Agent Wilkinson testified as follows: Johnson "voluntarily came back" to the interview room; Agent Wilkinson informed Johnson that he would need to submit to a pat-down; Johnson was "free to leave" when he submitted to the pat-down; Agent Wilkinson detected a bulge "likely some type of drug;" he "knew it wasn't a weapon;" and he handcuffed Johnson after removing the item. (Tr. Vol. II, pgs. 128-29.) Johnson took the position that law enforcement had unlawfully exceeded the scope of a pat-down. The State argued that Agent Wilkinson had probable cause to make an arrest when he removed the ball of powder from Johnson's pocket. The trial court agreed with the State that what had transpired was "a search incident to arrest." *Id.* at 148.

[6] Johnson was convicted as charged and sentenced to four years imprisonment, with three years suspended to probation. Johnson now appeals.

# Discussion and Decision

[7] The trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). Generally, evidentiary rulings are reviewed for an abuse of discretion and reversed when admission is clearly against the logic and effect of the facts and circumstances. *Id.* However, when

a challenge to an evidentiary ruling is predicated on the constitutionality of a search or seizure of evidence, it raises a question of law that is reviewed de novo. *Id.* The State has the burden to demonstrate that the measures it used to seize information or evidence were constitutional. *State v. Roger*, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008). "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016).

[8] The Fourth Amendment "regulates all nonconsensual encounters between citizens and law enforcement officials." *Thomas*, 81 N.E.3d at 625. The Fourth Amendment guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Nonconsensual encounters "typically are viewed in two levels of detention: a full arrest lasting longer than a short period of time, or a brief investigative stop." *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). The former requires probable cause to be permissible, while the latter requires a lower standard of reasonable suspicion. *Id.* Determining whether there was a consensual encounter, or some level of detention turns upon an objective

evaluation of whether, under all the circumstances, a reasonable person would feel free to disregard the police and go about his business. *Id.*

[9] Agent Wilkinson testified that he asked Johnson to come into the interview room to explain "his side of the story" and Johnson "voluntarily came back." (Tr. Vol. II, pg. 111.) Agent Wilkinson explained that Johnson would "need a pat-down," *Id.* at 112, and Johnson submitted. The initial encounter between Johnson and Agent Wilkinson was akin to a *Terry*[5] stop. *See Clenna v. State*, 782 N.E.2d 1029 (Ind. Ct. App. 2003) (recognizing that an investigative stop by an officer responding to a report of suspicious activity in a drug store was a *Terry* stop).

[10] It is well-settled Fourth Amendment jurisprudence that a police officer may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if the officer has a reasonable suspicion that criminal activity "'may be afoot.'" *Id.* at 1032 (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). If the officer possesses a reasonable fear of danger when making a *Terry* stop, he or she may conduct a carefully limited search of the suspect's outer clothing in an attempt to discover weapons that might be used to assault the officer. *Granados v. State*, 749 N.E.2d 1210, 1213 (Ind. Ct. App. 2001). Johnson does not argue that Agent Wilkinson lacked a reasonable suspicion of

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

criminal activity and he does not challenge the decision to perform a pat-down search.

[11] But the encounter did not end with a pat-down. Agent Wilkinson reached into Johnson's pocket and retrieved a ball of a powdered substance, which he did not suspect to be a weapon. Generally, the Fourth Amendment to the United States Constitution prohibits a warrantless search. *Berry v. State*, 704 N.E.2d 462, 465 (Ind. 1998). One exception to this rule is a search incident to a lawful arrest. *Gibson v. State*, 733 N.E.2d 945, 953 (Ind. Ct. App. 2000). "Evidence resulting from a search incident to a lawful arrest is admissible at trial." *Id.* However, "[a]n unlawful arrest cannot be the foundation of a lawful search." *Id.* "Evidence obtained as a direct result of a search conducted after an illegal arrest is excluded under the fruit of the poisonous tree doctrine." *Id.* at 954.

[12] The salient inquiry is whether Agent Wilkinson had probable cause to arrest Johnson when the search occurred. "Probable cause exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Robles v. State*, 510 N.E.2d 660, 664 (Ind. 1987). The amount of evidence necessary to satisfy the probable cause requirement for a warrantless arrest is to be determined on a case-by-case basis. *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind. Ct. App. 2004).

[13]     Prior to detaining Johnson, Agent Wilkinson had interviewed Eversole, who reported a brief encounter in which a black male wearing a white hat tried to sell "white girl," a street term for cocaine. (Tr. Vol. II, pg. 89.) The agent's review of surveillance footage corroborated an encounter but no criminality.[6] However, he later learned that Johnson was in possession of a ball of something. Arguably, Eversole's report of criminal activity coupled with Johnson's apparent possession of contraband established probable cause for an arrest. But the very brief testimony elicited from Agent Wilkinson does not establish when he obtained the additional knowledge.

[14]     Agent Wilkinson testified on direct examination as follows:

> Question: Okay and when you entered into the interview room did you inform him that you needed to pat him down?
>
> Agent: Yes. [Objection]
>
> Court: Sustained.
>
> Question: Were there any items that drew your attention?
>
> Agent: Yes.
>
> Question: Okay – tell us about that.

---

[6] There was no audio, and Agent Wilkinson did not see a transfer of anything.

Agent: There was essentially it felt like a giant ball and so that's – and with the information I had with the report of him attempting to sell drugs to patrons it felt you know like a ball of drugs essentially so that was –

Question: Okay you've had some basic drug recognition training?

Agent: Yes. . . .

Question: Okay so when you felt this – based on the information you already have – had did you remove it from his pocket?

Agent: Yes.

(Tr. Vol. II, pgs. 111-114.)[7]

[15] The testimony suggests alternative scenarios as to how Agent Wilkinson discovered the apparent contraband. The agent may have been conducting "a carefully limited search of outer clothing to detect weapons," *Granados*, 749 N.E.2d at 1213, when he discerned characteristics consistent with contraband, notwithstanding the fabric barrier. Or Agent Wilkinson, having received information of an attempted sale of contraband, may have reached into Johnson's pocket and examined the item before concluding it was likely

---

[7] Agent Wilkinson testified in a similar fashion at the suppression hearing. He was asked "what happened when you got into the room" and responded: "We got in the room I padded [sic] him down for weapons – and in his front, I believe, left pocket there was a giant ball and you know from the information I had and also with my training and experience I took that to be drugs or contrabands [sic] so – once that was discovered he was then placed under arrest." (Tr. Vol. 1, pg. 71.)

contraband. In the first scenario, Agent Wilkinson would arguably have, without exceeding the scope of a *Terry* pat-down for weapons, developed probable cause for an arrest. In the second scenario, Agent Wilkinson would have conducted the search before having probable cause for an arrest and thus the seizure did not take place in a search incident to arrest. It is incumbent upon the State to prove that the measures it used to conduct a search and seize evidence were constitutional. *Roger*, 883 N.E.2d at 139. Here, the State failed to satisfy its burden; the evidence does not dispel concern that the ball of powder retrieved from Johnson's pocket was obtained in violation of his Fourth Amendment right to be free from an unlawful search and seizure.

# Conclusion

[16] The State did not establish that the measures used to seize the challenged evidence were constitutional. Accordingly, the trial court abused its discretion in admitting the evidence.

[17] Reversed.

Kirsch, J., and Mathias, J., concur.